**In re Larry THOMAS, Sr., Debtor.**

**No. 02–55026–RFH.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Nov. 5, 2004.

Jason M. Orenstein, Macon, GA, for Debtor.

John T. McGoldrick, Jr., Macon, GA, for Security Bank.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Security Bank of Bibb County's Motion for

Relief From Stay. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(G). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

On Friday, November 1, 2002, Debtor filed this Chapter 13 case (the "2002 case"). In his schedules he listed a 3.67 acre vacant lot in Bibb County, which the parties stipulated had a fair market value of $25,000 on November 25, 2002. The property secured a lien held by Security Bank of Bibb County. Debtor listed Security Bank as a creditor with a claim of $26,000. The lot also was encumbered by junior judgment liens. The clerk of the bankruptcy court issued notice of the bankruptcy filing on Monday, November 4, 2002.

On Tuesday, November 5, Security Bank conducted a foreclosure sale of the lot. Security Bank was the best and highest bidder and paid $20,000 for the lot. At the time of the foreclosure sale, Security Bank had not received notice of Debtor's bankruptcy filing.

Bankruptcy notices received by Security Bank are forwarded to Charles R. Blankenship, Security Bank's assistant vice president of collections recovery and security. When Mr. Blankenship received the notice, no later than November 12, 2002, he sent it to attorney Arthur L. Phillips, who had been retained to handle bankruptcy matters on behalf of Security Bank. Because Mr. Phillips had concerns about the foreclosure sale, he contacted Debtor's attorney, Jason M. Orenstein, by phone. Mr. Orenstein told Mr. Phillips that the bankruptcy had been filed to stop an unrelated lawsuit, so it was okay for the bank to resell the lot to a third party as long as it received fair market value. On February 6, 2003, without seeking relief from the automatic stay, Security Bank sold the vacant lot to a third party for $25,000. Notwithstanding the foreclosure sale, Security Bank mistakenly filed a secured claim in the 2002 case and received a payment from the Chapter 13 trustee in the amount of $523.

On February 28, 2003, Debtor's 2002 case was dismissed prior to confirmation. Shortly thereafter, on March 13, 2003, Debtor filed another Chapter 13 petition (the "2003 case"). Security Bank filed three proof of claim forms in the 2003 case, all of which asserted unsecured claims. Although the Security Bank did not seek adequate protection payments, it received $4,238.59 from the Chapter 13 trustee in the 2003 case. Security Bank believed the payments were distributions to unsecured creditors, because the Chapter 13 plan had provided for a 100 percent dividend.

The 2003 case was converted to a Chapter 7 case in December 2003, and Debtor filed an adversary proceeding to determine the amount of the debt secured by the vacant lot in March 2004. Throughout Debtor's two bankruptcy cases, he made minimal efforts to develop or otherwise assert an ownership interest in the lot, merely dumping 50 loads of dirt on the land in the summer of 2003 and doing some clean-up work.

Upon realizing that Debtor claimed an interest in the lot, Security Bank filed a motion to reopen the 2002 case, which was granted. It then sought an annulment of the automatic stay to retroactively validate the foreclosure sale, which is the issue presently before the Court. The Court held a hearing on August 16, 2004, during which the parties presented evidence and legal arguments in support of their positions.

## Conclusions of Law

The automatic stay goes into effect at the time a debtor files a bankruptcy petition and enjoins creditors from, among other things, collecting on a prepetition debt or exercising control over property of the bankruptcy estate. 11 U.S.C.A. § 362(a) (West 1993 & Supp.2004). Thus, it prevents a creditor from foreclosing on collateral.

 Because bankruptcy cases often are filed on the eve of foreclosure, foreclosing creditors may not be aware of the filing unless contacted by the debtor's attorney and may impermissibly, but not intentionally, go forward with a foreclosure sale in violation of the stay. In such cases, the sale is void. *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 675 (11th Cir.1984). However, the bankruptcy court can retroactively annul the stay "in appropriately *limited* circumstances," thereby validating the sale. *Id.* (citing 11 U.S.C.A. § 362(d)).

 This Court has interpreted *Albany Partners* as establishing minimum requirements for retroactive annulment of the stay. First, the creditor must demonstrate that it "justifiably believed its action did not violate the automatic stay." *IMC Mortgage Co., Inc. v. Brown (In re Brown),* 251 B.R. 916, 919 (Bankr.M.D.Ga. 2000) (Walker, J.). In other words, the violation must not have been willful. Second, the creditor must prove that it "did not violate the policies underlying the automatic stay" by showing that its actions "did not interfere with the 'breathing spell'" created by the stay and that "its foreclosure had no negative impact on other creditors." *Id.*

 With respect to the first requirement, Debtor has conceded that Security Bank had no notice of the bankruptcy case on the date of the foreclosure sale. It had no reason to believe it was violating the automatic stay when it did not even know a stay was in effect. With respect to the second requirement, Security Bank has shown that Debtor was not making any use of the lot. His only effort at improving the land was to place loads of dirt on it and to do some cleaning. Because he was not making any productive use of the land that might result in some income or other benefit to Debtor, the sale did not interfere with Debtor's breathing spell or harm other creditors. Furthermore, the liens on the lot exceed its value, so Debtor is not harmed by lifting the stay.

Although Security Bank's violation of the stay was innocent, it is not without fault. Security Bank could not pass clear title to the lot when it resold the property because the foreclosure was still void. The title problem was never remedied because, despite being aware of the problem since November 9, 2002, Security Bank did not make a motion to invalidate the stay until June 4, 2004, when Debtor pressed an interest in the property. Notwithstanding this neglect, the equities favor Security Bank. After all, it did not act in a vacuum. It only resold the property after getting the green light to do so from Debtor's attorney.

Debtor's effort to regain the property at this point looks like sheer opportunism. Debtor has presented no evidence to show why he needs this property or why it would hurt him to grant retroactive stay relief. As the Court has explained, the principles of bankruptcy law, the policies underlying the automatic stay, and the integrity of the system would not be undermined by granting Security Bank's motion. Thus, this case represents the type of limited circumstances in which the Court may annul the stay.

Security Bank's work is not done. It still must prove it is entitled to stay relief

pursuant to Section 362(d), which provides as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

> (2) with respect to a stay of an act against property under subsection (a) of this section, if—

> > (A) the debtor does not have an equity in such property; and

> > (B) such property is not necessary to an effective reorganization[.]

11 U.S.C.A. § 362(d).

In this case, Security Bank has argued that subsection (d)(2) applies. The undisputed facts indicate that Debtor has no equity in the vacant lot. The fair market value of the lot is $25,000, and it secures more than $25,000 in debt. The facts also show that the lot is not necessary to an effective reorganization. In Chapter 13 cases, the type of property commonly considered necessary to a debtor's effective rehabilitation is a vehicle used to transport the debtor to and from his place of employment. 3 Collier on Bankruptcy ¶ 362.07[5] (15th ed. rev'd 2004). As noted above, there is no evidence that the lot in question benefits Debtor in any way. Even while he technically retained an interest in the lot, he was unable to successfully complete a Chapter 13 case. Therefore, the Court concludes that the property is not necessary to an effective rehabilitation.

Because Security Bank has satisfied the requirements for stay relief and because the circumstances in this case are the type that warrant retroactive stay relief, the Court will grant Security Bank's motion. The Court will annul the automatic stay with respect to Security Bank's interest in the vacant lot, retroactively effective as of November 4, 2002. Consequently, as a matter of law, neither the foreclosure nor the resale of the vacant lot violates the automatic stay.

An Order in accordance with this Opinion will be entered on this date.

### ORDER

In accordance with the Memorandum Opinion entered on this date, the Court hereby GRANTS the motion of Security Bank of Bibb County for relief from the automatic stay.

The Court further hereby ORDERS that the stay be annulled retroactively to November 4, 2002, with respect to Security Bank's interest in the 3.67 acre lot at issue.